# Supreme Court of Texas

No. 23-0167

The University of Texas Rio Grande Valley,
*Petitioner*,

v.

Rita Oteka,
*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued February 20, 2025**

JUSTICE DEVINE delivered the opinion of the Court.

The Texas workers' compensation system represents a carefully crafted legislative compromise between the conflicting interests of employees and employers. For personal injuries sustained in the course and scope of employment, covered employees waive their right of action to recover damages and instead are eligible for more certain and prompt benefits without having to prove fault or negligence.[1] In exchange,

---

[1] *See* TEX. LAB. CODE §§ 406.031(a), .034(a).

employers have limited liability and are entitled to an exclusive-remedy defense against damages claims for work-related injuries.[2] The Division of Workers' Compensation administers the system and has exclusive jurisdiction to determine compensation entitlement and to award any benefits.[3]

Here, an employee sued her employer to recover for a nonwork-related injury. The employer raised the exclusive-remedy defense, claiming the injury was, in fact, work-related. In this interlocutory appeal, the issue is not who is right, but who decides: the district court or the Division. We hold that the Division does not have exclusive jurisdiction to determine whether an injury was work-related in a dispute arising outside of the compensability context when the employee's requested relief does not depend on entitlement to benefits. Because the Legislature did not divest the district court of subject-matter jurisdiction to decide the issue, we affirm.

# I

Rita Oteka, a faculty member of The University of Texas Rio Grande Valley, voluntarily attended a commencement ceremony to support her former students. While she was walking to her car after the event, a vehicle driven by a University police officer struck and injured her.

The University, a self-insured employer for workers' compensation purposes, reported the injury to its third-party claims

---

[2] *Id.* §§ 406.031(a), 408.001.

[3] *Id.* § 402.001(b); *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 804 (Tex. 2001).

administrator.[4] When asked, Oteka replied that she would use personal insurance. In a subsequent letter to Oteka and the Division, the claims administrator stated that benefits are being denied because (1) Oteka is seeking treatment under her own insurance and not pursuing benefits; (2) no supporting medical evidence was presented; and (3) based on its investigation and available information, the injury did not arise out of and in the course and scope of her employment.[5]

Oteka never contested this denial nor filed a compensation claim with the Division. She alleges that she did not file a claim with the Division, timely or otherwise,[6] because the University's claims administrator confirmed what she already knew: that her injuries did not occur in the course and scope of her employment.

More than a year later, Oteka sued the police officer for negligence. The University, as the officer's governmental employer,

---

[4] The University is a higher-education institution under the governance, management, and control of The University of Texas System's board of regents. TEX. EDUC. CODE § 79.02; *see* TEX. LAB. CODE §§ 503.001(3) (defining "institution"), .022 ("An institution may self-insure as part of a system insurance plan."). Chapter 503, which governs workers' compensation coverage for employees of the System's institutions, incorporates most provisions of the Texas Workers' Compensation Act. TEX. LAB. CODE § 503.002(a). If an employee's injury results in absence from work for more than one day, the employer must report the injury to the insurance carrier, who must then report it to the Division. *Id.* § 409.005(a)–(e).

[5] After receiving notice of an injury, an insurance carrier must notify the Division and the employee if it refuses to pay benefits. *Id.* § 409.021(a)(2). The stated grounds for refusal "constitute the only basis for the insurance carrier's defense on the issue of compensability in a subsequent proceeding, unless the defense is based on newly discovered evidence that could not reasonably have been discovered at an earlier date." *Id.* § 409.022(b).

[6] *Id.* § 409.003(1) (requiring a compensation claim to be filed with the Division not later than one year after the date on which the injury occurred).

substituted in as the defendant per a Rule 11 agreement.[7] Among other defenses, the University asserted that recovery of workers' compensation benefits is the exclusive remedy for a covered employee, like Oteka, when the injury is work-related.[8] Thus, for the first time, the University placed in dispute whether Oteka's injury occurred in the course and scope of her employment and was thereby work-related.[9]

The parties filed cross-motions for summary judgment on the exclusive-remedy defense. Oteka claimed the injury was not

---

[7] *See id.* § 503.002(c) (noting that neither the Workers' Compensation Act nor Chapter 503 authorizes a cause of action or damages against an institution or its employees "beyond the actions and damages authorized by Chapter 101, Civil Practice and Remedies Code," the Tort Claims Act); *see also* TEX. R. CIV. P. 11 (governing litigation agreements). Chapter 101 waives a governmental unit's immunity for, among other things, personal injuries arising from the operation of a motor vehicle that were proximately caused by a governmental employee's negligence, if "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE §§ 101.021(1), .025(a). The Tort Claims Act also requires dismissal of a suit against an employee based on conduct within the general scope of employment if the governmental unit is not timely substituted in as the defendant. *Id.* § 101.106(f).

[8] TEX. LAB. CODE § 408.001(a); *see* TEX. CIV. PRAC. & REM. CODE § 101.028 (providing that a governmental unit that has workers' compensation insurance "is entitled to the privileges and immunities granted by the workers' compensation laws of this state to private individuals and corporations").

[9] *See* TEX. LAB. CODE § 401.011(10) (defining "compensable injury" as one "that arises out of and in the course and scope of employment for which compensation is payable under this subtitle"), (12) (defining "course and scope of employment"). The parties treat "course and scope" as coextensive with the phrase "work-related" in the exclusive-remedies provision, *see id.* § 408.001, but whether that is so and to what extent is an open question, *see Payne v. Galen Hosp. Corp.*, 28 S.W.3d 15, 19 (Tex. 2000) (leaving open the question of whether "course and scope of employment for compensation purposes" and "'work-related' for exclusivity purposes" "are always and for all purposes coextensive").

4

work-related because she voluntarily attended the ceremony and had already left when she was injured. The University, on the other hand, argued that clinical-track faculty members, like Oteka, are expected to attend at least one ceremony a year, which counts towards a requirement to spend 10% of worktime in service, and that Oteka was injured while in the parking lot of the leased convention center, an access point for attending the ceremony.

Before the district court ruled on the motions, however, the University's claims administrator reversed course. Thirty-one months after the incident and a year after the University first raised its exclusive-remedy defense, the administrator sent a letter to Oteka stating that her injury "has been accepted as compensable" and that benefits would be paid.[10] The next day, the University filed a plea to the jurisdiction, arguing that the Division has exclusive jurisdiction to determine whether a covered employee sustained an injury while in the course and scope of her employment. According to the University, Oteka's suit must be dismissed, regardless of whether her injury was work-related, because she failed to file a compensation claim with the Division for a ruling on the course-and-scope issue and thereby failed to

---

[10] "An insurance carrier may reopen the issue of the compensability of an injury if there is a finding of evidence that could not reasonably have been discovered earlier." TEX. LAB. CODE § 409.021(d). At oral argument, the University's counsel asserted that Oteka's summary-judgment evidence meets the standard for reopening the issue.

exhaust her administrative remedies.[11] The district court denied the plea, and the University appealed.[12]

The court of appeals affirmed.[13] Relying on its own precedent, the court noted that the Division's exclusive jurisdiction "does not extend to all cases that touch on workers' compensation issues" and that trial courts often decide whether the exclusive-remedy defense applies.[14] Acknowledging contrary authority from other courts of appeals, the court nonetheless held that Oteka was not required to exhaust administrative remedies because her personal-injury suit is "not based on the ultimate question of whether she is eligible for workers' compensation benefits."[15]

The University petitioned for review, citing a line of intermediate appellate-court cases holding that the Division's "exclusive jurisdiction to determine compensability necessarily encompasses exclusive

---

[11] Throughout the proceedings, the University has argued that Oteka's lawsuit must be dismissed with prejudice, but at oral argument, the University agreed that a more appropriate remedy would be abatement of the proceedings so that Oteka can "go through the administrative process."

[12] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (providing for an interlocutory appeal from the denial of a plea to the jurisdiction by a governmental unit).

[13] 704 S.W.3d 1, 2 (Tex. App.—Corpus Christi–Edinburg 2023).

[14] *Id.* at 4-5 (quoting *Berry Contracting, L.P. v. Mann*, 549 S.W.3d 314, 320-21 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied)).

[15] *Id.* at 5-6 (discussing *In re Hellas Constr., Inc.*, No. 03-21-00182-CV, 2022 WL 2975702, at *7 (Tex. App.—Austin July 28, 2022, orig. proceeding [mand. denied]); *Berrelez v. Mesquite Logistics USA, Inc.*, 562 S.W.3d 69, 71-72, 74 (Tex. App.—San Antonio 2018, no pet.); and *In re Tyler Asphalt & Gravel Co.*, 107 S.W.3d 832, 843 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding)).

6

jurisdiction to determine whether an injury or death occurred in the course and scope of employment."[16] In response, Oteka pointed to a competing line of precedent that is consistent with the underlying court of appeals' opinion.[17] We granted the petition to resolve the split of authority.

## II

### A

The Texas Constitution vests district courts with "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred . . . on some other court, tribunal, or

---

[16] *Tyler Asphalt*, 107 S.W.3d at 839; *accord In re Tex. Mut. Ins. Co.*, No. 04-24-00386-CV, 2025 WL 610877, at *4 (Tex. App.—San Antonio Feb. 26, 2025, orig. proceeding) ("[T]he Division has the exclusive jurisdiction to determine if the worker was an employee injured in the course and scope of employment, i.e. compensability, regardless of whether compensability is asserted by the worker or the company."); *In re Prentis*, 702 S.W.3d 762, 769 (Tex. App.—Houston [1st Dist.] 2024, orig. proceeding) (concluding in a negligence suit that "the Division has exclusive jurisdiction to determine in the first instance whether Sykes was in the course and scope of his employment when the collision occurred"); *Hellas Constr.*, 2022 WL 2975702, at *5 ("[W]e conclude that [the Division] had exclusive jurisdiction over the question of eligibility regardless of whether there was, in fact, a pending claim or merely a potential claim."); *Berrelez*, 562 S.W.3d at 74 (reaching the same conclusion as *Tyler Asphalt*).

[17] *See Berry Contracting*, 549 S.W.3d at 320 (concluding that the Division did not have exclusive jurisdiction because the personal-injury suit was not based on "the ultimate question" of the plaintiff's eligibility for workers' compensation benefits); *see also In re Recess Arcade Bar, LLC*, No. 03-24-00230-CV, 2024 WL 3048577, at *1 (Tex. App.—Austin June 19, 2024, orig. proceeding) (following *Berry Contracting*); *Medrano v. Kerry Ingredients & Flavours, Inc.*, No. 02-20-00247-CV, 2021 WL 1323432, at *1-2 (Tex. App.—Fort Worth Apr. 8, 2021, no pet.) (same).

administrative body."[18]  By contrast, administrative agencies, as legislative creations, may exercise "only those powers expressly conferred and necessary to accomplish [their] duties."[19]  An agency, therefore, has no presumption of adjudicative jurisdiction, either concurrent or exclusive.[20]  A party resisting a district court's jurisdiction in favor of an agency's must demonstrate that the Legislature divested the court of subject-matter jurisdiction by vesting exclusive jurisdiction with an agency.[21]  We have described this burden as requiring a "compelling showing"; otherwise, "we presume that remedies remain intact and that the jurisdiction of a district court—our state's sole court of general jurisdiction—remains undisturbed."[22]

Whether an agency has exclusive jurisdiction to adjudicate an issue is a question of statutory interpretation that we review de novo.[23] To answer this question, we look to whether the Legislature has enacted

---

[18] TEX. CONST. art. V, § 8; *see* TEX. GOV'T CODE §§ 24.007(a) ("The district court has the jurisdiction provided by Article V, Section 8, of the Texas Constitution."), .008 ("The district court may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity.").

[19] *In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 156 (Tex. 2021) (orig. proceeding) (quoting *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018)).

[20] *Pape Partners, Ltd. v. DRR Fam. Props. LP*, 645 S.W.3d 267, 271-72 (Tex. 2022).

[21] *Id.* at 272.

[22] *S.C. v. M.B.*, 650 S.W.3d 428, 436 (Tex. 2022).

[23] *CenterPoint Energy*, 629 S.W.3d at 154; *see Emps. Ret. Sys. of Tex. v. Duenez*, 288 S.W.3d 905, 910 (Tex. 2009) ("[E]xclusive jurisdiction must be granted by the Legislature; an agency cannot grant exclusive jurisdiction to itself.").

either "an express grant of exclusive original jurisdiction to the agency or a 'pervasive regulatory scheme' indicating that [it] intended 'the [administrative] process to be the exclusive means of remedying the problem' presented."[24] As to the latter, all regulatory schemes have limits, so the inquiry also requires a determination about whether the disputed issue falls within the scope of the agency's exclusive jurisdiction.[25] If so, "the agency has the sole authority to make an initial determination regarding that issue, and a trial court lacks jurisdiction until a party has exhausted administrative remedies."[26]

To determine whether the Legislature granted the Division the sole authority to initially decide the course-and-scope issue raised by the University's exclusive-remedy affirmative defense, we turn now to the operative statute.

## B

The Workers' Compensation Act provides that an employee is generally eligible for compensation benefits "without regard to fault or negligence" if (1) "the employee is subject to" the Act at the time of injury and (2) "the injury arises out of and in the course and scope of

---

[24] *Pape Partners*, 645 S.W.3d at 272 (alterations in original) (quoting *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004) (orig. proceeding)).

[25] *CenterPoint Energy*, 629 S.W.3d at 156; *see In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 48 (Tex. 2021) (orig. proceeding) ("The Legislature's decision to *regulate* an issue is not coextensive with a wholesale disruption of the adjudication of private disputes touching on that issue.").

[26] *CenterPoint Energy*, 629 S.W.3d at 154.

employment."[27]  The Department of Insurance oversees the workers'
compensation system, and the Division of Workers' Compensation
administers and operates the system, regulates and administers the
business of workers' compensation, and ensures that the Act and other
laws regarding workers' compensation are executed.[28]  To assist in the
Division's administration, the Act establishes finely honed adjudication
procedures to resolve disputes about compensation benefits.[29]  By
statute, these benefits are the exclusive remedy for work-related
injuries: "Recovery of workers' compensation benefits is the exclusive
remedy of an employee covered by workers' compensation insurance
coverage . . . against the employer . . . [for] a work-related injury
sustained by the employee."[30]

Based on this regulatory scheme, we have held that the Division
has exclusive jurisdiction to determine a claimant's entitlement to

---

[27] TEX. LAB. CODE §§ 406.031(a) ("Liability for Compensation"), .032 ("Exceptions").  An employee may elect to waive coverage under the Act and retain "all rights of action under common law" by providing timely notice to the employer at the inception of employment or when the employer later obtains coverage.  *Id.* § 406.034(b).  Employees of institutions in the University of Texas System may waive their coverage rights in writing "before becoming an employee." *Id.* § 503.024.  Oteka does not assert that she waived coverage.

[28] *Id.* §§ 402.001, .00114(a).

[29] *See id.* §§ 410.001–.308; *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 434, 437 (Tex. 2012) (describing the dispute-resolution process); *see also* TEX. LAB. CODE § 402.021(a)(2), (b)(5) (listing among the basic goals and legislative intent that "each injured employee shall have access to a fair and accessible dispute resolution process" and the system shall "minimize the likelihood of disputes and resolve them promptly and fairly when identified").

[30] TEX. LAB. CODE § 408.001(a).

benefits, subject to judicial review.[31] We have also concluded that when an employee's suit for damages is predicated on an entitlement to benefits—for example, a suit for delay damages or bad-faith denial of benefits—an employee may not "circumvent the [Division]'s exclusive authority to decide that issue."[32] But not all statutory and common-law claims against an employer improperly circumvent the Division's exclusive jurisdiction.[33]

In this case, no one disputes that the district court would have jurisdiction over Oteka's lawsuit if her injury is not work-related, as she has pleaded. Nor are the personal-injury damages she seeks predicated on an entitlement to workers' compensation benefits. And when Oteka filed suit, it was uncontested that her injury was outside the course and scope of her employment. Indeed, the University's claims administrator had told her exactly that in its initial letter. No claim that Oteka's injury was work-related was raised for nearly three years, and it then became an issue only in connection with the University's exclusive-remedy affirmative defense.

---

[31] *See Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 804 (Tex. 2001) (holding that "only the [Division] can determine a claimant's entitlement to compensation benefits"); *see also* TEX. LAB. CODE §§ 410.255(a), .301 (providing for judicial review).

[32] *Am. Motorists Ins.*, 63 S.W.3d at 804 (noting that a court cannot "award damages for a denial in payment of compensation benefits without a determination by the [Division] that such benefits were due"). The Act also "provides the exclusive process and remedies for claims arising out of a carrier's investigation, handling, or settling of a claim for workers' compensation benefits." *In re Accident Fund Gen. Ins. Co.*, 543 S.W.3d 750, 751 (Tex. 2017) (orig. proceeding) (quoting *In re Crawford & Co.*, 458 S.W.3d 920, 925-26 (Tex. 2015) (orig. proceeding)).

[33] *See Accident Fund*, 543 S.W.3d at 753.

11

The University acknowledges that the Legislature did not enact express language granting the Division exclusive jurisdiction to determine the exclusive-remedy defense and its subsidiary issues—e.g., course and scope, workers' compensation insurance coverage, employee and employer status, and injury. As to at least one of these issues, the University concedes that the Act does not provide the Division with the "exclusive jurisdiction to determine disputes concerning the existence or breadth of an employer's workers' compensation insurance coverage." In spite of this concession, the University argues that "the initial determination of any 'course and scope issue' must rest within [the Division]'s exclusive jurisdiction." We disagree. Regardless of who decides—the district court or the Division—the exclusive-remedy provision will bar recovery of damages if the injury is work-related. And in considering the Act, we see no indicia in its text or structure that the Legislature intended the administrative process to be the exclusive means for determining this defensive issue.

Significantly, the Act lacks a procedural mechanism for the employee or employer to obtain a course-and-scope finding from the Division without the employee first filing a compensation claim. "In construing statutory language, we presume the Legislature chose the statute's language with care, purposefully choosing each word, while purposefully omitting words not chosen."[34] Chapter 410 establishes the Division's process for adjudicating disputes, which consists of a four-tier system: (1) an informal benefit-review conference conducted by a

---

[34] *In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 158-59 (Tex. 2021) (orig. proceeding) (internal quotation marks omitted).

12

Division employee,[35] (2) a contested-case hearing before the Division,[36] (3) an appeal to the Division's appellate body,[37] and (4) judicial review.[38] To initiate the process, "the [D]ivision may direct the parties *to a disputed workers' compensation claim* to meet in a benefit review conference to attempt to reach agreement on disputed issues involved *in the claim*."[39] But the Act does not authorize a conference without a disputed workers' compensation claim. And by and large, the other dispute-adjudication steps are predicated on an initial benefit-review conference.[40]

---

[35] TEX. LAB. CODE §§ 410.021–.034.

[36] *Id.* §§ 410.151–.169; *see id.* §§ 410.101–.121 (alternatively providing for arbitration).

[37] *Id.* §§ 410.201–.209.

[38] *Id.* §§ 410.251–.308 (drawing a distinction between judicial review of workers' compensation appeals concerning compensability and those involving other issues). When an appeal is from a decision regarding compensability or benefits eligibility, the judicial-review standard is modified de novo with a right to a jury trial. *Id.* §§ 410.301, .304; *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516 (Tex. 2007) (stating that section 410.301 provides for modified de novo judicial review). The factfinder may consider, but is not bound by, the appeals panel's decision. *Morales*, 241 S.W.3d at 516 (citing TEX. LAB. CODE § 410.304). For other issues, there is no right to a jury, and the agency's decision is reviewed under a substantial-evidence standard. TEX. LAB. CODE § 410.255(b); TEX. GOV'T CODE § 2001.175(e).

[39] TEX. LAB. CODE § 410.023(a) (emphases added).

[40] *See id.* §§ 410.104 ("If issues remain unresolved after a benefit review conference, the parties, by agreement, may elect to engage in arbitration[.]"), .151(a) ("If arbitration is not elected . . . a party to a claim for which a benefit review conference is held . . . is entitled to a contested case hearing."), .202(a) (providing for an appeal of the "decision of an administrative law judge"), .251 (authorizing a party aggrieved by a final decision of the appeals panel to seek judicial review after exhausting administrative remedies); 28 TEX. ADMIN.

Under the Act, only an "employee or a person acting on the employee's behalf" may file a compensation claim.[41] A compensation claim, as statutorily defined, is a claim (1) for the "payment of benefits" (2) based on an injury (3) that "arises out of and in the course and scope of employment" and (4) "for which compensation is payable under" the Act.[42] Thus, "course and scope of employment" is a necessary component of a compensation claim. But to obtain a negative course-and-scope finding, the employee would be placed in the unnatural position of having to file a claim with the Division for the "payment of benefits" she neither seeks nor believes she is entitled to receive and, at the same

CODE § 142.5(a) ("Except as provided in this section, parties to a benefit dispute are required to attempt to resolve the dispute by mediation at a benefit review conference before proceeding to a contested case hearing or to arbitration by mutual election."). The Legislature also authorizes the commissioner to "adopt guidelines relating to claims that do not require a benefit review conference and may proceed directly to a contested case hearing or arbitration." TEX. LAB. CODE § 410.024(b); *see* 28 TEX. ADMIN. CODE § 142.5(b) (authorizing parties to a benefit dispute to proceed directly to a contested case hearing "if the [D]ivision determines that: (1) mediation would not prove effective to resolve the dispute; (2) necessary evidence cannot be obtained without subpoena; or (3) the situation of the parties or the nature of the facts or law of the case is such that the overall policy of the Act would be advanced by proceeding directly to a contested case hearing").

[41] TEX. LAB. CODE § 409.003. An employer may file a claim with the Division as a "subclaimant" if it has "provided compensation . . . to or for an employee or legal beneficiary" and "sought and been refused reimbursement from the insurance carrier." *Id.* § 409.009. An employer also has "the right to contest the compensability of an injury if the insurance carrier accepts liability for the payment of benefits." *Id.* § 409.011(b)(4). Neither of these paths, however, provides a route for a course-and-scope finding from the Division without the employee seeking compensation benefits or having been provided compensation.

[42] *See id.* § 401.011(5), (10), (11). "Benefit" refers to a medical, income, death, or burial benefit based on a compensable injury. *Id.* § 401.011(5).

14

time, argue against that very claim. What is more, an employer who has asserted the exclusive-remedy defense likely would not contest that compensation claim. In other words, under the University's theory, the employee would have to succeed in defeating her own compensation claim to exhaust her administrative remedies and pursue her lawsuit for a nonwork-related injury.[43]

We conclude that the Act does not manifest a legislative intent that this unusual process should be the exclusive means for determining the course-and-scope issue when an employer raises it by an affirmative defense to an employee's lawsuit.[44] In this context, we find the absence of express language to the contrary and the lack of an independent path for obtaining a course-and-scope finding to be determinative.

Consistent with this conclusion, we have on multiple occasions addressed the merits of the exclusive-remedy defense and its subsidiary issues without raising exclusive-jurisdiction concerns or requiring

---

[43] *See, e.g.*, *Douglas v. Moody Gardens, Inc.*, No. 14-07-00016-CV, 2007 WL 4442617, at *1 n.1 (Tex. App.—Houston [14th Dist.] Dec. 20, 2007, no pet.) (noting that although the employee failed to timely file a workers' compensation claim, she "apparently urged" in the administrative proceedings "the somewhat unusual position that her injury was not compensable, hoping to prevent a subsequent bar" to a negligence suit against her employer).

[44] *Cf. In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 50, 52 (Tex. 2021) (orig. proceeding) ("While the lack of a remedy alone is not dispositive of the jurisdictional question, if the plaintiff's allegations do not invoke an administrative remedy or assert an administrative claim, the suit is less likely to fall within the Commission's 'regulatory system.' . . . Much as a federal question presented as a defense does not create federal jurisdiction, Oncor's defense that its tariff might limit its liability does not create Commission jurisdiction."); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207-08 (Tex. 2002) (holding that the lack of a procedural mechanism in the statutory scheme to address a specific claim demonstrates that the Legislature did not intend for the agency to have exclusive jurisdiction over the claim).

exhaustion of administrative remedies.[45]  In *Walls Regional Hospital v. Bomar*, for example, we reviewed a trial court's summary judgment that the Act's exclusive-remedy provision barred the employee nurses' negligence claims against their hospital employer for allowing a physician with staff privileges to sexually harass them at work.[46]  At issue was whether the nurses' injuries were not work-related because they "arose out of an act of a third person intended to injure the employee because of a personal reason and not directed at the employee as an employee or because of the employment."[47]  In considering the issue, we did not vacate the judgment and dismiss or abate the case for the nurses to obtain an administrative course-and-scope finding. Instead, we reached the defense's merits, holding that "[b]ecause the summary judgment record establishes that plaintiffs' injuries occurred in the course of their employment, the Act bars plaintiffs' negligence action against the Hospital."[48]

If a statutory scheme "is truly jurisdictionally exclusive, then every Texas court (including this Court) would be duty-bound to dismiss *sua sponte*" an action within the agency's exclusive jurisdiction because "[c]ourts always have the duty to ensure that subject-matter

---

[45] *See, e.g.*, *Waste Mgmt. of Tex., Inc. v. Stevenson*, 622 S.W.3d 273, 276 (Tex. 2021) (employee status); *City of Bellaire v. Johnson*, 400 S.W.3d 922, 924 (Tex. 2013) (employee status); *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475-77, 478-81 (Tex. 2005) (employer status and coverage); *Walls Reg'l Hosp. v. Bomar*, 9 S.W.3d 805, 808 (Tex. 1999) (course and scope); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999) (injury).

[46] 9 S.W.3d at 806.

[47] *Id.* at 806-07 (quoting TEX. LAB. CODE § 406.032(1)(C)).

[48] *Id.* at 808.

16

jurisdiction—their own and that of the lower courts—is secure."[49]  Of course, when neither the parties nor the court raises a jurisdictional issue, an implicit conclusion that subject-matter jurisdiction exists to reach the merits is not a precedential jurisdictional holding.[50]  But as in *Walls Regional Hospital*, it does provide persuasive support that in exercising its independent obligation, the Court identified no jurisdictional obstacles.

In sum, the Workers' Compensation Act's text and structure, the presumption in favor of the district court's jurisdiction, and our precedent all point in the same direction: the Division does not have exclusive jurisdiction to determine whether an injury occurred in the course and scope of employment when (1) the employer raises the issue as an affirmative defense outside the compensability context and (2) the employee's requested relief does not depend on any entitlement to

---

[49] *S.C. v. M.B.*, 650 S.W.3d 428, 449 (Tex. 2022); *see City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (noting in a workers' compensation case raising an exclusive-jurisdiction issue that "all courts bear the affirmative obligation 'to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it'" (quoting *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010))).

[50] *See Rattray v. City of Brownsville*, 662 S.W.3d 860, 869 (Tex. 2023) ("The statement that courts have the authority and indeed the duty to resolve any jurisdictional doubts that arise before proceeding to the merits does not mean that we expect courts to become Inspector Javert, hunting for defects that the parties do not see or raise.  Courts are empowered to note potential jurisdictional defects sua sponte, but the adversary process remains the touchstone of litigation even in this context."); *Thomas v. Long*, 207 S.W.3d 334, 339-40 (Tex. 2006) (noting that when a court reaches the merits of a case, it has implicitly concluded that it has subject-matter jurisdiction and is denying jurisdictional challenges).

benefits.  To the extent our courts of appeals have concluded otherwise, we disapprove of the holdings in those opinions.[51]

## C

"The exclusive-remedy provision is essential to the Act's continued success,"[52] and our opinion today by no means diminishes that provision's importance.  As we have noted, "[i]f employers are required to provide not only workers' compensation but also to defend and pay for accidental injuries, their ability to spread the risk through reasonable insurance premiums is threatened, and *the balance of advantage and detriment* [between employers and employees] would be significantly disturbed."[53]  We are mindful, as both the University and amicus curiae caution, that some may improperly view our jurisdictional holding as a path to circumvent the statutory scheme and take a shot at a greater tort recovery before seeking benefits.[54]  In such a scenario, litigation

---

[51] *See In re Tex. Mut. Ins. Co.*, No. 04-24-00386-CV, 2025 WL 610877, at *4, *7 (Tex. App.—San Antonio Feb. 26, 2025, orig. proceeding); *In re Prentis*, 702 S.W.3d 762, 769-74 (Tex. App.—Houston [1st Dist.] 2024, orig. proceeding); *In re Hellas Constr., Inc.*, No. 03-21-00182-CV, 2022 WL 2975702, at *4-5 (Tex. App.—Austin July 28, 2022, orig. proceeding [mand. denied]); *Berrelez v. Mesquite Logistics USA, Inc.*, 562 S.W.3d 69, 74-75 (Tex. App.—San Antonio 2018, no pet.); *In re Tyler Asphalt & Gravel Co.*, 107 S.W.3d 832, 839-40, 843 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

[52] *Mo-Vac Serv. Co. v. Escobedo*, 603 S.W.3d 119, 125 (Tex. 2020).

[53] *Id.* (alterations in original) (emphasis added) (quoting *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 407 (Tex. 1985)).

[54] Amicus Curiae Texas Mutual Insurance Company argues that exclusive jurisdiction must lie with the Division because, otherwise, injured workers would be encouraged "to simply bypass entirely the [Division's] dispute resolution process, and instead to have issues such as course and scope decided in the first instance by a civil jury."

18

costs may be increased contrary to the Act's purposes by allowing both judicial and administrative proceedings, even if a tort recovery is eventually barred for a work-related injury.[55] Nevertheless, legislative and judicial safeguards are in place to maintain the Act's balance of advantage and detriment.

First, the Act requires an employee to file a compensation claim within a year after the injury occurred.[56] If the employee fails to do so, the employer and its insurance carrier are relieved of liability under the Act unless the claim is uncontested or "good cause exists for failure to file a claim in a timely manner."[57] The test for good cause, which "must continue to the date the claim is actually filed,"[58] is "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."[59] Thus, the mere desire to have a bite at a larger tort recovery before seeking benefits would be insufficient to establish

---

[55] *See Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 440, 451 (Tex. 2012) (noting that the Act's administrative proceedings are designed to, among other things, "reduce the number and cost of judicial trials [and] speed up the time for the entire dispute resolution process" while recognizing that "increase[ed] litigation expense" "builds additional costs into the system," potentially "distort[ing] the balances struck in the Act and frustrat[ing] the Legislature's intent to have disputes resolved quickly and objectively").

[56] *See* TEX. LAB. CODE § 409.003.

[57] *Id.* § 409.004(1), (2).

[58] *Lee v. Hous. Fire & Cas. Ins. Co.*, 530 S.W.2d 294, 296 (Tex. 1975).

[59] *Id.* (quoting *Hawkins v. Safety Cas. Co.*, 207 S.W.2d 370, 384 (Tex. 1948)).

19

good cause.[60] And given the Act's compressed timeline for filing a claim, it is unlikely an employee would be able to complete a lawsuit, with any ensuing appeals, before pursuing benefits. So to preserve both possible recovery options when course and scope of employment is in doubt, an employee would need to file a compensation claim with the Division before the one-year deadline, even if she also pursues a lawsuit. Otherwise, the employee may end up recovering nothing if the injury is determined to be work-related.

Second, when parallel proceedings are pending in both the court and the Division, prudential grounds may support (or even require) abatement of the employee's lawsuit.[61] The Division, in exercising its

---

[60] On the other hand, an employer's statement to an employee that the injury occurred outside the course and scope of her employment may be a relevant good-cause consideration. *See id.* at 297 ("Reliance on statements of employers or their agents may constitute good cause for a delayed filing [of a compensation claim].").

[61] *See Dolenz v. Cont'l Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex. 1981) ("A court, in exercise of its sound discretion, may abate an action for reasons of comity, convenience and orderly procedure, and in exercise of that discretion may look to the practical results to be obtained, dictated by a consideration of the inherent interrelation of the subject matter of the two suits[.]" (internal quotation marks and citations omitted)); *cf. Kallinen v. City of Houston*, 462 S.W.3d 25, 28-29 (Tex. 2015) ("A court may decide, exercising sound discretion, to abate proceedings to await the Attorney General's ruling [on whether the Public Information Act excepted withheld information from disclosure]. . . . If the court determines that under the circumstances of a particular case a decision from the Attorney General before adjudication of the merits of disclosure would be beneficial and any delay would not impinge on a requestor's right to information, abatement would be within the court's discretion."). Even when pending parallel administrative proceedings have not yet been undertaken, a referral to an administrative agency and abatement may be necessary to allow the agency to consider certain issues within its core area of authority. *See, e.g.*, *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 402-03, 405 (Tex. 2007) (orig. proceeding) (conditionally granting mandamus relief

exclusive jurisdiction to determine a claimant's entitlement to benefits, will decide the subsidiary course-and-scope issue in a relatively efficient administrative proceeding.[62] That proceeding also may eliminate the need to litigate an employer's fault or negligence if it is determined that the injury is work-related and the employee is entitled to compensation benefits. As a result, allowing both proceedings to simultaneously proceed would inject needless uncertainty and confusion due to the potential for conflicting rulings, unfairly burden the parties with the complexity and expense of dual-track litigation, and waste judicial and administrative-agency resources.[63]

---

directing the trial court to refer certain issues to the administrative agency and to abate the case while the agency reviewed the referred issues). The University, however, sought only dismissal up until oral argument, not abatement. *See supra* note 11. Accordingly, we have no opportunity here to further address whether or to what extent a disputed course-and-scope issue that has been raised by an employer's exclusive-remedy defense could be referred to the Division.

[62] *See Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 440, 451 (Tex. 2012) (noting that the current Workers' Compensation Act is designed to "speed up the time for the entire dispute resolution process" and "have disputes resolved quickly and objectively" while providing "meaningful proceedings at the administrative agency level").

[63] *See Mantas v. Fifth Ct. of Appeals*, 925 S.W.2d 656, 659 (Tex. 1996) (orig. proceeding) ("It makes no sense for the court of appeals to expend its resources, and require the parties to expend theirs, on an appeal which may be moot. Certainly, a ruling on the merits of the appeal before judgment is rendered in the enforcement suit would inject needless uncertainty and confusion into the issues surrounding the settlement."); *In re Luby's Cafeterias, Inc.*, 979 S.W.2d 813, 816 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (holding that "the reasoning in *Mantas* is equally applicable here" to abate a personal-injury lawsuit while a workers' compensation claim is pending); *cf., e.g.*, *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 876 (Tex. 2021) (orig. proceeding) (noting that in the underinsured-motorist context, "[i]nsurers have a substantial right not to undergo the expense of

That said, no parallel proceeding before the Division is pending in this case. And the sole issue raised in the University's plea to the jurisdiction and in its petition is whether the Division has exclusive jurisdiction over the course-and-scope issue. We therefore need not, and do not, consider whether nonjurisdictional prudential grounds would support abatement in this case.

## III

For the foregoing reasons, we hold that the Division's exclusive jurisdiction does not extend to determining whether an injury was work-related when that issue was raised by the employer's exclusive-remedy defense and the employee's lawsuit does not hinge on entitlement to workers' compensation benefits. We affirm the court of appeals' judgment.

John P. Devine
Justice

**OPINION DELIVERED:** June 13, 2025

---

litigating and conducting discovery on issues that ultimately may be unnecessary because of the result of the underlying tort case" (alteration in original) (internal quotation marks and citation omitted)).